### Joe Walters v. The State.

#### No. 110.   Decided February 2, 1910.

**Gaming—Charge of Court—Remaining in Gambling House—Private Residence— Statutes Construed—Resort.**

The object of article 388f, Act of Thirtieth Legislature, page 109, making it an offense for any person to go into and remain in a gambling house, etc., is to punish people who frequent gambling halls, or places where people resort for the purpose of gaming, betting or wagering, and does not apply to a private residence where the same was not resorted to for the purpose of gaming.

Appeal from the County Court of Henderson. Tried below before the Hon. John S. Prince.

Appeal from a conviction of unlawfully remaining in gambling-house; penalty, a fine of $25.

The opinion states the case.

*Miller & Royall,* for appellant.—Cited cases in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—The first count in the information charges that appellant did unlawfully go into and remain in the house of Matilda Hagan, alias Matilda Brown, said house then and there being a gambling-house, as the said Joe Walters then and there well knew, against the peace and dignity of the State. The second count charges that appellant did then and there unlawfully remain in a place, to wit: the house of Matilda Hagan, alias Matilda Brown, where a game of cards

was then and there being unlawfully played at by Tom Scott and Samson Johnson, as the said Joe Walters then and there well knew, and where money was then and there being bet and wagered on said game of cards, as the said Joe Walters then and there well knew. The jury returned a general verdict, finding appellant guilty and assessing his punishment at a fine of $25.

W. W. Day, a witness for the State, testified that in company with the city marshal he went to the residence of Matilda Hagan, or Brown, which is located in Athens, Henderson County, Texas. "We approached the house from the east, and after having arrived at the house we stopped in the chimney corner to see if we could hear any signs of gambling on the inside of the house. We remained there about twenty minutes, and I could hear the shuffling of cards and I could hear voices but could not tell what they were saying. We then went around to the front door of the house and it was closed and bolted. I pushed the door open and went into the front room. There I found Tom Scott and Samson Johnson playing cards and betting on the game. They had cards in their hands and had money up. There were several negroes in the room looking on the game, and among them was the defendant, Joe Walters. He was sitting by the table or trunk where Samson Johnson and Tom Scott were playing." Two other witnesses swear substantially to the same facts for the State. Appellant testified as follows: "I was passing the private residence of Matilda Hagan, and she was sitting on her front gallery, and I spoke to her and began a conversation. I then asked her if she had any water, and she answered there was some in the kitchen, and she and I went around the house and entered the rear door of the kitchen. We talked four or five minutes in the kitchen, then I went to the water bucket, which was in the kitchen and located near the partition door, which leads into the sleeping room. There were several parties in the sleeping room, but I do not know who any of them were. I did not see Samson Johnson and Tom Scott playing cards or betting at the time named. I simply went by to get a drink of water. I remained at the gate and front gallery about two or three minutes, and I stayed in the kitchen something like four or five minutes. I did not go into the front room until Mr. Day had come into the house and called on us to throw up our hands and consider ourselves under arrest. I then went into the sleeping room in obedience to the command of the officer." The above is practically all the evidence introduced.

1. Among other charges given by the court was the following: "You are instructed that our statutes make it an offense for any person to remain in a place where he knows that a game of cards is being played for money, or where persons are wagering money on a game of cards, and such person knowing of such wager remains, and further provides that such offense shall be punished by a fine of not less than twenty-five nor more than fifty dollars.

"It is an offense for any person to bet or wager any money at any game of any character that can be played with cards, without reference to where such game is played, or whether or not such game is played at a private residence occupied by a family."

Then the court proceeded to apply the principles of the law above stated to the facts of this case. Appellant asked the court to give the following charge, which was refused: "If you believe from the evidence that the playing occurred in a private residence occupied by a family then article 388f does not apply and your verdict will be not guilty." In this connection it should be stated that the prosecution in this case was under article 388f, Act of Thirtieth Legislature, p. 109, which article reads as follows: "If any person shall go into or remain in any gambling-house, knowing the same to be such, or shall remain in any place where any of the games prohibited by this Act are within his knowledge being played, dealt or exhibited, he shall be punished by a fine of not less than twenty-five nor more than fifty dollars. Gambling-house and gaming-house, as used in this Act, is meant any place where people resort for the purpose of gaming, betting or wagering." In the cases of Singleton v. State, 53 Texas Cr. Rep., 625, and Purvis v. State, 52 Texas Crim. Rep., 342, we held it to be an offense under the law for one to wager at a game of cards at any time or place in this State. In the case of Hanks v. State, 54 Texas Crim. Rep., 1, we held that where the evidence showed that the defendant and others were playing cards on a blanket in a shed room to a barn, while a dance was going on, but did not show that the defendant owned the house or had leased it or that there was any equipment showing the same to be a gambling establishment, or that anyone else had played any game at this place either before or since the occurrence of the act relied on for conviction, that this did not constitute in law the keeping or exhibiting of any of the games referred to or named in the statute. We think that from the language of the Act above referred to, "If any person shall go into or remain in any gambling-house, or remain in any *place* where any of the games prohibited by this Act are within his knowledge being played," taken in connection with the language "gambling-house and gaming-house" is meant any place where people resort for the purpose of gaming, betting or wagering, and that it was intended to make it an offense for persons to frequent gambling-halls where people resorted and where the same are conducted, in a sense, continuously. The evils the Legislature had in mind were no doubt to prevent patronage and frequenting of such places by persons who might be tempted into evil conduct, or where in such centers of vice the idle, the vicious and the corrupt might become a menace to society, and be provoked to breaches and violations of the law. In this case the house was a private residence. The evidence does not show it was a gaming-house in the sense in which that term is used. True, a private residence may become a gambling-house if continuously or even frequently resorted to for this purpose, but the

house here is not made to appear by the evidence to be such a place. It was not intended, we think, by the Legislature to make it an offense for one who either as a guest, visitor or inmate of a house failed to flee from same as from a scourge, because without his knowledge and probably without his consent other inmates or persons were for the time being engaged in gaming. The whole tenor of the Act above quoted manifestly bears this construction.

As presented, we do not think the facts make out a case, and the court should, under the evidence, have given the instructions requested by appellant to return a verdict in his favor.

For the error pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

McCord, Judge, not sitting.