HUB FRIDGE v. THE STATE.

No. 5934.   Decided June 8, 1921.

### 1.—Keeping Gambling House—Statutes Construed—Gaming Defined.

The only characteristic of each place mentioned in Article 559, Vernon's P. C., which must be alleged in order to charge a felony under said article, is that it was for the purpose of being used as a place to bet, wager, etc., or do the other things forbidden. If the accused was not sought to be charged as renting or keeping or permitting his property to be used for the purpose, etc., but is one at which a casual or isolated game forbidden by law was allowed or permitted, then the allegation of such fact, etc., might charge a misdemeanor and be prosecuted under Article 572, P. C., of 1911. Following Francis v. State, 233 S. W. Rep., 974.

### 2.—Same—Felony—Indictment—Statutes Construed—Gambling With Cards.

Where the indictment in the instant case charged that the defendant did keep and was interested in keeping a house and room, etc., the same being then and there not a private residence, occupied by a family, for the purpose of being used as a place to bet and wager, and to gamble with cards, and as a place where people did then and there resort to gamble, bet, and wager upon games played with cards, the same charges a felony under Article 559, supra, which article is upheld as not in such conflict with Article 572, supra, or any other article of said penal code, so as to be destructive thereof.

### 3.—Same—Continuance—Second Application—Want of Diligence—Discretion of Court.

The truth or merit of any application for continuance is primarily addressed to the trial court, and unless it appears that this discretion has been·

abused, there is no ground for reversal, and in the instant case, there was no reversible error in the conclusions of the trial court that there was a want of diligence, that a postponement would not likely procure the testimony of the absent witness, which was overwhelmingly contradictory of the evidence in the case, and would justify the court that the witness would not likely testify as alleged.

4.—Same—Postponement—Co-Defendant—Practice in Trial Court—Severance.

Where it appeared from the record on appeal that one Brooks was indicted for the same offense charged against the appellant, that appellant asked for a severance to place Brooks upon trial first, and that thereupon the State dismissed as to Brooks, and defendant asked that he be called for the purpose of having him sworn as a witness in his behalf; that Brooks failed to respond and appellant asked a postponement until he could secure process and have it served, to secure the attendance of Brooks as a witness. Held, that the refusal of such postponement is no reversible error, as one implicated in an offense cannot be compelled to testify to incriminate himself.

5.—Same—Witness—Conviction for Felony—Moral Turpitude.

The refusal of a witness to answer the question propounded by defendant's attorney as to whether he had ever been convicted of a felony was not reversible error, and could not form a sufficient predicate for the objection that such witness was incompetent because an unpardoned convict; the burden being upon the objector to show the incompetency of the witness; besides, the witness stated on cross-examination that he had not been confined in the penitentiary within the last ten years.

6.—Same—Evidence—Charter—Social Club—Race Discrimination.

Where, upon trial of keeping a gaming house, the defendant offered in evidence a certified copy of a charter granted to certain parties in 1910 to operate the "Trinity Club," there was no error to show that the incorporators were negroes, on cross-examination; as this could not be harmful or prejudicial to the case; besides, gaming was not and could not be permitted under such charter.

7.—Same—Evidence—Immaterial Testimony.

As to whether witnesses knew of good men who played cards, was properly held objectionable.

8.—Same—Sufficiency of the Evidence.

Where, upon trial of keeping a gambling house, the evidence sustained the conviction, under Article 559, Vernon's P. C., there was no reversible error.

Appeal from the Criminal District Court of Tarrant. Tried below before the Honorable Geo. E. Hosey.

Appeal from the conviction of keeping a gambling house; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Simpson & Moore, W. E. Myres,* and *W. B. Ammerman,* for appellant.—Cited: Simons v. State, 56 Texas Crim. Rep., 339.

*Alvin M. Owsley,* Assistant Attorney General, and *Jesse M. Brown,* District Attorney, for the State.—Cited Parshall v. State, 138 S. W.

Rep., 759; Knox v. State, 138 id., 787; Goodwin v. State, 143 id., 939; Robertson v. State, 70 Texas Crim. Rep., 307; Stevens v. State, 70 id., 565; Williams v. State, 71 id., 6.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Tarrant County of keeping and being interested in keeping a gambling house, and his punishment fixed at confinement in the penitentiary for two years.

Prior to 1907 our statute books contained many articles forbidding the various phases of gaming and running gambling houses, all of the things forbidden being misdemeanors. By the provisions of Chapter 49, Acts Regular Session, Thirtieth Legislature, Article 388 of the Penal Code was amended by rewriting said article and adding thereto numerous subdivisions, under the terms of which many acts theretofore defined and punished as misdemeanors were made felonies. The bill enacting into law said amendment contained no repealing clause, and many of the provisions of said Act appeared in conflict with existing laws on the same subject for which different punishments were prescribed. These matters of apparent conflict were in part considered by this court in Walters v. State, 58 Texas Crim. Rep., 240, 125 S. W. Rep., 12, and Simons v. State, 56 Texas Crim. Rep., 339, in which cases this court held that as to those parts of the law directly involved, the conflicts were apparent but not real. In this condition of the statutes and decisions, the codifiers appointed in 1907 and duly commissioned to revise and digest the laws of this State, reported to the Legislature in 1911, for its adoption a Penal Code which embraced in Chap. 4, Title 11 thereof, the laws against gaming existent prior to 1907, as well as those enacted on said subject during said year by the Thirtieth Legislature. In said Chap. 4, and as explanatory of their act in so including statutes in seeming conflict with each other, said codifiers, in terms, referred to and mentioned the case of Simons v. State, *supra,* and thereafter with full knowledge of such facts a bill was passed by the Thirty-second Legislature enacting into law, and as the Penal Code of this State, the said reported revision and codification. Thereafter, by a divided court in Robertson v. State, 70 Texas Crim. Rep., 307, the Simons case, *supra,* was overruled, and the majority of this court held that many of the articles brought forward by the codifiers and so adopted as the Penal Code of Texas by the Thirty-second Legislature in 1911, had been repealed in 1907 by implication, they being in conflict with the enactment of 1907 upon the same subjects. This condition of conflict and necessary confusion continued. The personnel of this court has changed several times since the decision in the Robertson case. Much effort seems to have been put forth to decide correctly the present *status* of the gaming laws, and what were those acts which were felonies, and those, if any, which were misdemeanors. This court has had before it several cases

involving these questions, which have given us no small amount of trouble. Many authorities have been examined. The apparent conflict of statutes and decisions was called to the attention of members of the Thirty-seventh Legislature in the hope that by legislative action such statutory conflict might be removed, but the limited time and the stress of important matters prevented legislative reconciliation of such apparent conflict. Many of these matters appear in the opinions in the cases of Francis v. State, 90 Texas Crim. Rep. 67 and Deisher v. State, 233 S. W. Rep., 978 this day decided, in which we held that the only characteristic of each place mentioned in Article 559, Vernon's P. C., which must be alleged in order to charge a felony under said article, is that *it was for the purpose of being used as a place* to bet, wager, etc., or do the other things forbidden; that is—if it be sought to charge a renting—it must be alleged that the house or premises were rented for the purpose of being used as a place for, etc.; if keeping be the offense sought to be charged—it must be alleged that such keeping was for the purpose of being used as a place for, etc.; if it be sought to charge the property as a resort—it must be alleged that such place was rented or kept, as the case might be, for the purpose of being used as a place where people resorted to gamble, etc.; if permitting be sought to be charged—it must be alleged that the accused permitted his property or premises to be rented or kept, etc., for the purpose of being used as a place to bet, wager, etc.

If the accused was not sought to be charged as renting or keeping, or permitting his property to be used for the purpose, etc., but as one at which a casual or isolated game forbidden by law was allowed or permitted, then the allegation of such fact and the omission of any charge that the property or premises was kept for the purpose of gaming, might charge a misdemeanor and be prosecuted under Article 572 of the Penal Code of 1911. To our minds the degree of criminality between permitting a casual game on one's premises, and that of permitting premises to be kept for the purpose of gaming, is apparent and real, and that one may well be a misdemeanor by legislative Act and the other a felony. In the instant case the charging part of the indictment is as follows: "Hub Fridge on the — day of December, 1919, did keep and was interested in keeping a house and room situated in said county, the same being then and there not a private residence occupied by a family, for the purpose of being used as a place to bet and wager and to gamble with cards and as a place where people did then and there resort to gamble, bet and wager upon games played with cards."

Without further discussing any question of conflict between Article 559, Vernon's P. C., under which this prosecution was brought, and Article 572 of the Penal Code of 1911, we have concluded that the indictment herein charged a felony, and that said Article 559 will be upheld as not in such conflict with said Article 572, or any other article of said Penal Code so as to be destructive thereof.

Appellant asked a continuance for Nip Rogers, who was alleged to be temporarily in Oklahoma. It was a second application. It appears that said Rogers was the witness or one of the witnesses for whom the first continuance was granted. It was stated in said application that at the time appellant procured his original process for said Rogers, the residence of said witness was unknown, but had been ascertained by appellant after the cause had been continued, and but recently before the making of the instant application. It was here alleged that said witness was at Holdenville, Oklahoma, and that interrogatories had been filed under the statute to take his deposition. The bill of exceptions to the overruling of this application was qualified by the trial court. It appears that said application was controverted by the State and evidence heard by the court as to diligence. It is made to appear that Rogers disappeared from his room in Fort Worth about the time of the return of the indictment herein, and that he had not been seen or heard of since, notwithstanding the fact that his room rent was paid up in advance to a time subsequent to that of his leaving. It was further shown in said qualification that all the subpoenaes issued to Tarrant county by appellant had stated that the residence of said witness was at the place from which it appeared he had fled. It was further shown that an officer had gone to Holdenville, Oklahoma, with a warrant for said witness, had inquired of all peace officers, the hotel keepers and boarding house keepers of said town, as well as many other persons, none of whom had heard of such a person in that vicinity The truth and merit of any application for a continuance is primarily addressed to the trial court, and unless it appears to us that his discretion in the refusal of such continuance had been abused, this court would not reverse a case for such refusal. We think the trial court in the instant case justified in concluding that diligence had not been used, and that a postponement would not likely procure the testimony of said Rogers. We are further of opinion from an examination of the record that the action of the court was strengthened by the fact that the evidence appeared so overwhelmingly contradictory of the facts stated to be expectant from said Rogers, as to justify the trial court in concluding either that said witness would not likely testify as stated, or that his testimony, if so given, would not likely have been true.

It appears from the record that one Brooks was indicted for the same offense charged against appellant, and that appellant asked for a severance and that Brooks be placed upon trial first. Thereupon, the State dismissed its case against Brooks, and appellant asked that he be called for the purpose of having him sworn as a witness in his behalf. Brooks failed to respond, and appellant asked a postponement of his case until he could procure the issuance and service upon Brooks of process, or secure his attendance as a witness. The refusal of such postponement by the court is here complained of. We are of opinion that no error was committed. One implicated

in an offense cannot be compelled to give evidence criminatory of himself. It appears from the testimony of numerous witnesses that Brooks was in the employ of appellant and dealing a game of cards in the house which appellant is charged to have kept as a gambling house. By no means known to us could appellant have obtained from Brooks the testimony which he states he expected, that is, that Brooks would swear that he and State witness Crowder ran said gambling house and that appellant did not so run the same. Especially do we think this true in view of the fact that various witnesses testified that appellant was in control of said place, rented same, himself dealt games of stud poker and other cards in said house, collected money from frequenters of the place, and other criminating facts. We think the trial court did not err in refusing the postponement asked.

That a witness for the State while on the stand refused to answer the question propounded by appellant's attorney as to whether he had even been convicted of a felony, would not seem to be error. His refusal to so answer could not form a sufficient predicate for the objection that such witness was incompetent because an unpardoned convict. The burden is upon the objector in any case to show the existence of the ground of alleged incompetence on the part of the witness. The form of the question asked appearing to extend back for an unlimited time, would make same subject to a proper objection because of its lack of materiality. However, we observe that said witness stated on cross-examination that he had not been confined in the penitentiary within the last ten years. This would appear to make the matter sought by appellant from said witness in order to affect his credibility, to be objectionable as immaterial.

As a matter of defense appellant offered in evidence a certified copy of a charter granted to certain parties in 1910 to operate "The Trinity Club." Thereafter the State was allowed to prove by the attorney who procured said charter, that the incorporators were negroes. We are unable to agree with appellant that proof of such fact was harmful or prejudicial to his case. We see no greater objection to proof of the fact, if such be true, that appellant acquired a charter from negroes, than proof of the fact that he acquired same from persons of any other race. The matter of said charter appears one of immateriality in any event. Numerous witnesses testified that gambling was going on in the room rented by appellant, and none testified to the carrying on of any conduct in said premises which would appear to be part of the legitimate operation of a club, other than that a domino and a pool table were kept in said room. We further observe that appellant's relation to said charter nowhere appears, and it would not be available as a defense, under the facts shown in this record.

Appellant's question to various witnesses as to whether or not they knew of good men who played cards, was properly held objectionable. It would be no justification or mitigation to appellant that other good

men did things which under some circumstances might be provable as acts of crime.

We have carefully examined all of appellant's contentions, and are of opinion that none of them are sound, and that under the facts in this case it is made to appear that the evidence supported the conviction, and an affirmance is ordered.

*Affirmed.*